# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RICKY DALE FAULKNER, <br><br> Defendant. | Case No. 3:21-cr-00216-RCT <br><br> **MEMORANDUM DECISION AND ORDER** |

Defendant Ricky Dale Faulkner moves the Court to suppress the fruits of the search under authority of a warrant executed at 628 Burrell Avenue, Space #5, in Lewiston, Idaho, on May 21, 2021.  Dkt. 33.  Following the evidentiary hearing held on March 28, 2022—and having reviewed the briefing by the parties and considered counsel's oral argument—for the reasons set forth below, the Court **DENIES** Defendant's Motion.  This memorandum supplements the oral findings of fact and conclusions of law announced by the Court at the conclusion of the hearing.

I

Evidence adduced at the March 28, 2022, hearing established that Detective Tyler Crane of the Lewiston Police Department and other members of the Quad

Cities Drug Task Force came to learn of Ricky Faulkner during their drug trafficking investigation of another local individual, John B. White. That investigation began in May 2021, and through the use of a confidential informant, the task force conducted multiple controlled purchases of heroin from White that month, during which the CI was outfitted with a covert electronic recording device. Based on the information gathered in these recordings, the task force learned that White's supplier was planning to travel to the Lewis-Clark Valley from Southern California with a large quantity of heroin and approximately four pounds of methamphetamines.

The CI contacted authorities on May 20, 2021, to inform them that White's source of supply had arrived, and the source's vehicle, a Dodge pickup with a "crotch rocket" in the truck bed, was presently parked in front of White's room, #131, at the Golden Oak Motel in Lewiston. Additionally, the CI told law enforcement authorities that the supplier was staying in the nearby Clearwater River Casino on the Nez Perce Indian Reservation and that White was borrowing his vehicle. Officers surveilled the Golden Oak Motel and found the truck, a gray 2002 Dodge Ram 1500 with a motorcycle in the bed, parked in front of Room #131, matching the description of the vehicle provided by the CI. The California license plate returned to a registered owner named Brad Sawyer from Torrance, California. When contacted by the task force, Torrance Police advised that Sawyer

had an extensive criminal record, including a history of drug distribution and weapons charges.

Detective Crane and other law enforcement officers further corroborated the CI's account during additional surveillance when they observed White travel to the Clearwater River Casino—the location where the CI had reported that White's source was staying.  The task force detectives subsequently confirmed through assistance from the staff at the casino and Nez Perce Tribal Police that Sawyer was renting Room #229.  Additionally, discussion captured during a controlled purchase from White corroborated the CI's information that Sawyer had brought four pounds of methamphetamines and a large quantity of heroin with him to the Lewis-Clark Valley, further establishing Sawyer to be White's source of supply.

Based on this information, authorities from the Quad Cities Drug Task Force, the FBI, Idaho State Police, and Nez Perce Tribal Police sought and executed a state search warrant on May 20, 2021, of Sawyer's hotel room. Recovered during the search were heroin, methamphetamines, and more than $10,000 in United States currency.  After being *Mirandized*, Sawyer told Detective Crane that he transported approximately four pounds of methamphetamines and a quarter of an ounce of heroin from Southern California to Lewiston.

In these admissions against penal interest to police, Sawyer told Detective Crane that he had been persuaded to transport drugs for the Mexican Mafia as a

"mule," and that he had delivered approximately four pounds of methamphetamines to a man named "Rick" in the Lewiston Orchards area on the night of May 19, 2021. Sawyer admitted that he received approximately $12,000 for the drugs and was charged with returning those proceeds to California. Corroborating this account was the approximately $10,600 in United States currency that had been recovered from the search of Sawyer's room in the casino. At a street price of approximately $3,000 per pound, the currency seized roughly supported the quantity Sawyer told Detective Crane he had delivered in Lewiston. During questioning, Sawyer showed Detective Crane and other task force officers his cell phone and pointed out Rick's phone number, beginning with a "208" area code, and the contact information which listed "Rick from Idaho." Although Sawyer said that he had been driven to Rick's residence by someone else, he described the residence as a trailer in the Lewiston Orchards area near the Lewiston airport and a Domino's Pizza store. Ex. 2. He additionally provided a physical description of "Rick" to authorities.

  The officers' further investigation using a regional law enforcement database named "Spillman" showed that Ricky Faulkner and a "GB" reside at 628 Burrell Avenue #5 in Lewiston. This address is in a trailer park near the Lewiston airport and a Domino's Pizza store location. According to their criminal records, both Faulkner and GB have a history of drug involvement. When shown known

photographs of Faulkner and GB obtained from Spillman, Sawyer confirmed Faulkner to be the recipient of the drugs he transported from California, and the description and name Sawyer had provided to law enforcement was a match for Ricky Dale Faulkner.

Although the methamphetamines had been delivered on the night of May 19, 2021, the task force reasonably believed the quantity sought to be four pounds—a quantity that, in their experience, was sufficiently large that it would be difficult to sell quickly in a two-day period.  Lewiston Police Detective Crane requested the warrant to search the trailer at issue on May 21, 2021, two days after Sawyer delivered the drugs to Faulkner.  Detective Crane, a task force officer, signed the affidavit in support of the search warrant application.  Ex. 1.  The Nez Perce County Prosecutor's Office reviewed and approved the search warrant application before it was presented to the issuing magistrate judge.  Items seized by law enforcement during the May 21, 2021, search include methamphetamines, a black bag with a scale, an Iberia Firearms/Hi-Point Model JCP .40-caliber handgun, a cell phone, and drug packaging material and paraphernalia.

II

Faulkner now moves to suppress the fruits of the search executed at 628 Burrell Avenue, Space #5, on the basis that the search warrant lacked probable cause.  A valid search warrant must be supported by probable cause under the

MEMORANDUM DECISION AND ORDER - 5

totality of the circumstances, *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002), based solely on the "information and circumstances contained within the four corners of the underlying affidavit." *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985). The issuing magistrate must only "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Probable cause was easily established here under the totality of the circumstances test. *See United States v. Bishop*, 264 F.3d 919, 924–26 (9th Cir. 2001). An established and reliable confidential informant—who had previously conducted multiple controlled purchases of contraband—recorded statements during the drug transactions, ultimately leading the task force to Sawyer, who was supplying drugs to the Lewiston area. Investigators amassed substantial corroborating information from their controlled purchases, surveillance of Sawyer, the warranted search of Sawyer's hotel room at the Clearwater River Casino, and Sawyer's inculpatory statements made after being read *Miranda* warnings to confirm that Sawyer was an integral participant as a mule in the drug supply chain

from California to Idaho. Authorities in California further confirmed that Sawyer had a substantial criminal history, including prior drug distribution.

Sawyer told officers that he had sold the drugs to Faulkner for approximately $12,000, and $10,600 of those alleged proceeds were recovered in Sawyer's hotel room. Sawyer showed law enforcement Faulkner's contact information in his cell phone—"Rick from Idaho" with a "208" area code number—identifying him as the purchaser of the contraband. Sawyer also described both the location of Faulkner's address at a trailer in Lewiston Orchards where the contraband was delivered and Faulkner's appearance in a detailed manner. Authorities successfully identified and located Faulkner's trailer at 628 Burrell Avenue, Space #5, based on Sawyer's description. Ex. 2. And when shown images of Faulkner and GB, Sawyer made a positive identification of them, confirming that he had delivered the methamphetamines to Faulkner at the trailer two days earlier.

The thrust of Faulkner's argument is that probable cause was not established here because Sawyer is an unreliable source of information, and therefore cannot be relied upon to establish probable cause. Faulkner bases his contention principally on *United States v. Hall*, in which the Ninth Circuit stated that "[a] known liar is less worthy of belief than an individual about whom nothing is known." 113 F.3d 157, 159 (9th Cir. 1997). There, the Ninth Circuit upheld the

district court's suppression of evidence where the government conceded that the "state trooper recklessly failed to disclose all of [the informant's] convictions during the search warrant hearing," so the only question was whether probable cause would have been established in the absence of the omitted material. *Id.*[1]

In support of the defense assertion that Detective Crane failed to provide material information when applying for the search warrant, Faulkner references language from Detective Crane's police report supplied during pretrial discovery that appears to reflect a summary of the interview in which Sawyer was initially hesitant to provide information about the crime. The motion also points to Sawyer's statement to authorities that purchasers of his contraband are ignorant to the fact that heroin from California is not better than or different from the heroin from Mexico, and although he knows it to be the same, he has never corrected his buyers' misimpression. Additional facts the motion highlights are that Sawyer initially mistakenly referred to Faulkner as "Robert" until checking his phone to

---

[1] Although Faulkner cites to *Hall*, nowhere in his motion does he actually request a hearing pursuant to *Franks v. Delaware*, nor does Faulkner's motion purport to make the necessary showing to support convening a *Franks* hearing. *See* 438 U.S. 154, 171 (1978) ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."). Counsel conceded at argument that he had not requested a *Franks* hearing.

MEMORANDUM DECISION AND ORDER - 8

see the contact, and that officers did not endeavor to verify whether Faulkner's height or vehicle matched the description provided by Sawyer.

To begin, it isn't clear to the Court how Detective Crane could have acted recklessly or intentionally to withhold material information from the issuing judge. But even if the omitted information had been included in Detective Crane's affidavit, the additional facts would not have undermined the factual sufficiency to establish probable cause. That Sawyer was initially recalcitrant and at first reluctant to answer officers' questions, that Sawyer did not correct his drug clientele as to their misperceptions about the sourcing of his heroin, and that Sawyer initially mistakenly referred to Faulkner as Robert rather than Rick do not undermine probable cause, given everything else contained in the affidavit in support of the search warrant, and therefore do not constitute material omissions or reckless or intentional withholding of important facts from the issuing magistrate.[2]

---

[2] While Sawyer originally said the name of the recipient of the contraband was "Robert," he corrected it to "Rick" after officers asked Sawyer to point out the recipient's contact in his cell phone. Though this misstatement was not disclosed to the issuing state magistrate judge, the Court finds after hearing the testimony of the interviewer, Detective Crane, that it was an inadvertent misrecollection by Sawyer. Although Sawyer initially said "Robert," he immediately corrected it to "Rick" when consulting his cell phone. Thereafter, the officer believed Sawyer was confident the person who received the drugs was "Rick from Idaho." Even if included in the affidavit, this information does not undermine the ample reliable evidence remaining to establish probable cause and a fair likelihood that incriminating evidence would be found in the place to be searched. *See Gates*, 462 U.S. at 243–46.

**MEMORANDUM DECISION AND ORDER - 9**

The CI corroborated key components of Sawyer's story—the quantity and route of the contraband—as did evidence seized in Sawyer's hotel room—including the quantity of money recovered.  The contact Sawyer showed law enforcement displayed the name "Rick from Idaho" and a phone number with Idaho's 208 area code.  The location described by Sawyer matched Faulkner's residence, the description of Rick provided by Sawyer is consistent with Faulkner's appearance, and Sawyer identified Faulkner by a known photograph of the man.

      Moreover, the Court finds Detective Crane to be a credible witness based on his law enforcement experience, his testimony on both direct- and cross-examination, intonation, and demeanor.  *See United States v. Haswood*, 350 F.3d 1024, 1028 (9th Cir. 2003) (stating that "special deference" is given "to the district court's credibility determinations").  It cannot be said, as Faulkner contends, that the statements by Sawyer were uncorroborated.  Even if this information had been included in the original affidavit, "a common sense determination would [still] establish probable cause."  *Hall*, 113 F.3d at 159; *see also United States v. Meling*, 47 F.3d 1546, 1556 (9th Cir. 1995).  Considering only the contents contained within the four corners of the warrant and affidavit—probable cause was easily established here under the totality of the circumstances.  *See Bishop*, 264 F.3d at

926.[3] Based on what was presented to the issuing state magistrate judge, there was a "fair probability that contraband or evidence of a crime [would] be found in [the place to be searched]." *Gates*, 462 U.S. at 238.

Moreover, even if Faulkner were able to establish that probable cause was lacking, he does not meaningfully contest that the good faith exception would apply here. "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926 (1984). It is only "if the warrant was so lacking in indicia of probable cause that no reasonably well-trained officer could believe that there was probable cause" that the good faith rule will not apply. *United States v. Tate*, 795 F.2d 1487, 1492 (9th Cir. 1986). That was not the case here, as the evidence from the suppression hearing showed.

For the reasons discussed, there was more than sufficient corroboration and incriminating specificity in the challenged search warrant, and it was reasonable

---

[3] During the evidentiary hearing, further evidence was adduced which was not included in the initial affidavit, including that Detective Crane had previously heard that Faulkner was involved in drug distribution in the Lewiston area and that the driver who accompanied Sawyer to the Burrell address also corroborated Faulkner's identity. But these omitted facts are inculpatory, and the information would have benefitted the government had it been included to further support the existence of probable cause.

MEMORANDUM DECISION AND ORDER - 11

for the officers to rely on initial review by the Nez Perce County prosecutor who presented the warrant to the magistrate and in reliance on the magistrate's imprimatur here.  See *Ortiz v. Van Auken*, 887 F.2d 1366, 1370 (9th Cir. 1989).[4]  As the Supreme Court said in *Gates*:  "[S]o long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more."  462 U.S. at 236 (cleaned up).

Accordingly, the Defendant's Motion to Suppress is **DENIED**.

DATED: March 30, 2022

Richard C. Tallman
UNITED STATES CIRCUIT JUDGE

---

[4] The government initially contended that Faulkner lacked standing to challenge the search, but this assertion was undermined by the government's repeated references to the trailer and address as connected to Faulkner in order to establish probable cause.  See generally Dkt. 46; see also *United States v. Silva*, 247 F.3d 1051, 1057 (9th Cir. 2001) ("The government cannot take contradictory positions in order to defeat an asserted expectation of privacy.").  At the evidentiary hearing, the government conceded Faulkner had a reasonable expectation of privacy, so the Court does not decide the motion on this basis.  See *United States v. Lopez-Cruz*, 730 F.3d 803, 808 (9th Cir. 2013) (providing the state of the law regarding standing in the Ninth Circuit).

MEMORANDUM DECISION AND ORDER - 12